UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-558-H

AGNES WADLINGTON, as Administratrix
of the Estate of Lavonda Torain, deceased, etc.                    PLAINTIFF

V.

JAMES ROLSHOUSE
and
JAMES ROLSHOUSE & ASSOCIATES, PLLC                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

     This is a legal malpractice case originally filed in Jefferson Circuit Court and removed to federal court on the grounds of diversity.  Plaintiffs are Agnes Wadlington ("Wadlington"), in her capacity as Administratrix of the Estate of Lavonda Torain ("Torain"), deceased, and J.D.D., Torain's minor son, by and through his Next Friend and Legal Guardian, James Day ("Day").  In their complaint, Wadlington and Day claim that Defendant James Rolshouse ("Rolshouse") who is an attorney acted negligently in undertaking legal representation of the Estate of Lavonda Torain, specifically by failing to keep Wadlington updated regarding the status of the case and failing to inform her of the applicable statute of limitations.

     Rolshouse has moved to dismiss on the grounds that he is not subject to the personal jurisdiction of Kentucky courts.  No Kentucky or federal court has looked at circumstances such as ours.  Consequently, no such court has found jurisdiction on the limited facts existing here. This is a difficult and close case.  This Court can decide the jurisdictional issue only on a tentative basis at this time.

I.

The Court has not conducted an evidentiary hearing to determine jurisdiction. Therefore, the following factual summary derives from the pleadings and affidavits taken in the light most favorable to Wadlington and Day, and without considering Rolshouse's version of disputed facts. *See Papa John's Int'l, Inc. v. Entm't Mktg. & Commc'n Int'l, Ltd.*, 381 F. Supp. 2d 638, 639-40 (W.D. Ky.2005)(citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998)).

In August 2003, Wadlington's daughter, Torain, died in Hopkinsville, Kentucky where Torain resided.  On September 15, 2003, Wadlington, an Indiana resident, was appointed Administratrix of the Estate of Lavonda Torain in Christian County District Court, Kentucky. Torain was survived by her minor son, J.D.D.,  a Kentucky resident.  In March 2004, Wadlington, in her capacity as administratrix, contacted Minnesota resident and attorney Rolshouse regarding potential claims against the medical providers who treated Torain prior to her death.  By letter dated March 16, 2004, Rolshouse mailed a proposed contractual retainer agreement, medical malpractice questionnaire, and patient authorization for release of information to Wadlington's residence in Indiana.  Wadlington signed and dated the retainer agreement, and completed the medical release and questionnaire in Indiana and returned the documents to Rolshouse's Minnesota law office.  Rolshouse did not sign the retainer agreement. According to Wadlington, despite her numerous attempts to contact Rolshouse for an update on the status of the case, she did not receive communication from him or his office.  The statute of limitations for any wrongful death claim in Kentucky ran on September 15, 2004, the one-year anniversary of the creation of the Estate.  On November 19, 2004, Rolshouse sent Wadlington a letter declining representation.

2

In considering a 12(b)(2) motion to dismiss, where the disputed jurisdictional facts are "intimately intertwined" with the dispute on the merits, a district court may find it more efficient and fair to rule on the basis of the parties' written submissions and reserve ultimate factual determinations on the jurisdictional issue for trial. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214-15 (6th Cir. 1989).  Here, the jurisdictional facts, most notably the disputed existence of an attorney-client relationship with a Kentucky party, are intimately intertwined with resolution of the parties' underlying dispute. Thus, the Court will consider whether Wadlington and Day's written submissions make a prima facie showing of jurisdiction at this time. The Court reserves the option of finally resolving the jurisdictional dispute after discovery or at trial.  *See id.* at 1212, 1215.

II.

For purposes of conducting the personal jurisdiction analysis, the Court must address whether an attorney-client relationship existed, and if so, it must identify the parties to that relationship.[1]  Indeed the existence of an employment relationship with an attorney is also an element of a legal malpractice claim in Kentucky.  *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) (citations omitted).

Rolshouse says he "never undertook to represent" Wadlington or Day in the underlying medical malpractice case.  Wadlington and Day counter that Rolshouse "contracted with the Administratrix to pursue a Kentucky wrongful death claim against Kentucky doctors on behalf of Kentucky residents" and that "at the time he received the retainer agreement and completed questionnaire," he knew or should have known that he was acting in Kentucky and practicing

---

[1]"A pretrial ruling denying a 12(b)(2) motion to dismiss 'does not purport to settle any disputed factual issues germane to the underlying substantive claim.'" *Serras*, 875 F.2d at 1214 (internal citation omitted).

Kentucky law.  Neither side supports their arguments on the existence (or lack thereof) of an

attorney-client relationship with citation to relevant law.  However, by reference to Kentucky

law, the Court observes that:

> [t]he lawyer/client relationship can arise not only by contract but also
> from the conduct of the parties.  Courts have found that the relationship is
> created as a result of the client's reasonable belief or expectation that the
> lawyer is undertaking the representation.  Such a belief is based on the
> conduct of the parties.  The key element in making such a determination is
> whether confidential information has been disclosed to the lawyer.

*Lovell v. Winchester*, 941 S.W.2d 466, 468 (Ky. 1997)(concluding that a person's initial

consultation with an attorney prevented the attorney from later declining representation and

representing the adverse party); *see also Jackson v. Law Firm of O'Hara, Ruberg, Osborne, and

Taylor*, 875 F.2d 1224, 1230 (6th Cir. 1989)(noting (before *Lovell*) the absence of "Kentucky

case determining what constitutes an attorney-client relationship for malpractice purposes" but

observing that "courts generally base their conclusions on whether a contract of representation

has been executed on whether the alleged client is reasonably justified in believing that the

attorney represents him.").   Those factors which courts in a variety of jurisdictions have found

to support such a belief include: a consultation with an attorney, the consulting party's intent to

seek legal advice, making an express contract, and an attorney's receipt of, or attempt to receive

confidential information or records.  *See* 48 AM. JUR. PROOF OF FACTS 2D *Existence of Attorney-

Client Relationship* § 525 (2007)(collecting and summarizing factors that courts in other

jurisdictions have considered in determining whether an attorney-client relationship exists).

 Here, after contacting Rolshouse concerning a potential claim arising out of her

daughter's death in Kentucky, Wadlington promptly executed and returned the retainer

agreement that Rolshouse had sent her.  The cover letter, which Rolshouse had included with the retainer agreement, stated, "[o]nce the Retainer Agreement is received in our office we will begin to investigate your potential claim."  Wadlington also provided Rolshouse with her daughter's social security number and date of birth and authorized Rolshouse to seek release of her daughter's medical records which she indicated would be located, among other places, in Kentucky.  In addition, she provided him with contact information for her daughter's medical providers.  Wadlington attempted to contact Rolshouse regarding the status of her case on multiple occasions.

Rolshouse says there was no attorney-client contract because he never accepted or signed the retainer agreement that Wadlington returned to him and he never performed work under the alleged contract in Kentucky prior to declining representation via letter dated November 19, 2004.  Rolshouse directs the Court's attention to language in the cover letter to the retainer agreement which states: "This firm does not representation [sic] you until we receive and accept your signed retainer agreement." The retainer agreement itself provides: "If your claim, in Attorney's opinion, does not appear to have adequate merit, then attorney shall have the right at any time to cancel this Agreement by notifying client in writing by regular mail at Client's last known address.  Attorney cannot, and therefore does not in any manner by entering this Agreement or otherwise, make any promises or guarantees with regard to the outcome of Client's claim."

Under *Lovell*, however, the question is whether Wadlington has a "reasonable belief or expectation" that Rolshouse had undertaken representation.  The Court finds that during the nearly seven months that elapsed between Wadlington returning the retainer agreement and

5

questionnaire to Rolshouse and the date he mailed her written notice of his decision to "decline" representation, it was reasonable for her to believe that there was an attorney-client relationship. The Court reaches this conclusion by considering Wadlington's clear intent to seek legal advice on behalf of her daughter's estate through her initial contact with Rolshouse, and by Rolshouse's indication of his desire to investigate the claim by sending Wadlington the retainer agreement and accompanying forms.  In addition, Wadlington's signature on the retainer agreement drafted by Rolshouse (where she agreed to a forty-five percent contingency fee) and her provision of her daughter's social security number are evidence of her belief that Rolshouse was representing her. Indeed, it seems unlikely that Wadlington would have authorized Rolshouse to obtain her daughter's medical records unless she believed there was an attorney-client relationship. Although Rolshouse was not obligated initially to investigate or otherwise act in connection with the potential claim, his decision to wait seven months to inform Wadlington that he had declined the case made it reasonable for her to believe, in the meantime, that he had undertaken representation.

III.

Upon finding, for purposes of this jurisdictional analysis, that an attorney-client relationship existed, the Court must properly identify the parties involved, their interests, and their connection to Kentucky.  To do so, the Court briefly examines the nature of the underlying claim, which, undisputedly arises from the death of Torain and involves a claim for medical malpractice.  Regardless of where a medical malpractice suit might have been filed, for purposes of federal diversity or removal, the residency of the personal representative is irrelevant because "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the

6

same State as the decedent." 28 U.S.C. § 1332(c)(2) (2000).  Thus for purposes of diversity jurisdiction, Wadlington, in her capacity as administratrix of a Kentucky estate would be deemed to be a citizen *only* of Kentucky.  The Court offers this observation as evidence of how, in other contexts, federal courts consider the relationship between an administratrix and the estate she represents.

Although Rolshouse correctly points out that undertaking representation did not necessarily obligate him to file a complaint in Kentucky, it seems highly unlikely that a medical malpractice could have been filed in any other state.  After all, Torain was a Kentucky resident who died in Kentucky and was under the treatment of Kentucky doctors at the time of her death.  Her estate was created by operation of Kentucky law and for this reason, the Court will apply Kentucky law to analyze whose interest Rolshouse represented following his contact with Wadlington in her capacity as administratrix of the Kentucky estate.  Under Kentucky law, the appropriate cause of action for medical malpractice would have been a wrongful death suit, Ky. Rev. Stat. Ann. § 411.130(1), which *must* be prosecuted by the personal representative of the deceased. *Richardson v. Dodson*, 832 S.W.2d 888, 889 (Ky. 1992); *Sparks v. Craft*, 75 F.3d 257, 259 (6th Cir. 1996).  In such suits, the administratrix is "merely a nominal plaintiff," and the real party interest is the beneficiary of the estate which the administratrix represents.  *See McCoy v. Carter*, 323 S.W.2d 210, 218 (Ky. 1959).[2]  The Sixth Circuit has expressly rejected the argument that the personal representative, as opposed to the beneficiary, is the real party in interest in such claims.  *Sparks*, 75 F.3d at 261.  By operation of the wrongful death statute, Torain's minor son, J.D.D. would be the sole beneficiary of any recovery.  *See* Ky. Rev. Stat. Ann. §

---

[2]Even if a personal representative is also a beneficiary, she still does not have standing to sue in her individual capacity.  *Cf. Richardson*, 832 S.W.2d at 889.

7

411.130(2)(c)("If the deceased leaves a child or children, but no widow or husband, then the whole to the child or children").  Thus, J.D.D., a Kentucky resident, is the real party in interest of Torain's Kentucky estate.

Therefore, the Court concludes that although Wadlington would have been the nominal plaintiff by express instruction of the wrongful death statute, the real party in interest for purposes of the wrongful death claim was a Kentucky resident. Rolshouse undertook legal representation of a Kentucky estate for the ultimate benefit of a Kentucky resident.  This conclusion is bolstered by the fact that Rolshouse addressed correspondence to "Agnes Wadlington/ On behalf of your daughter," that Wadlington signed the retainer agreement and releases she returned to Rolshouse as "Agnes Wadlington for Lavonda Torain" and that even Rolshouse's letter declining representation referenced the "Lavonda Torain Medical Malpractice Claim."

IV.

Having addressed the nature of the alleged attorney-client relationship, the Court now proceeds to the personal jurisdiction analysis.  To determine whether personal jurisdiction exists over a nonresident defendant, the Court applies the law of the forum state subject to the constitutional limits of due process. *CompuServe v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Kentucky courts "have determined that the long-arm statute within this jurisdiction allows Kentucky courts to reach the full constitutional limits of due process." *Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002). Thus, the Court need only conduct a single due process inquiry. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998)(citing *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992)).

8

The applicable portion of Kentucky's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . .causing tortious injury by an act or omission in this Commonwealth." Ky. Rev. Stat. Ann. § 454.210(2)(a)(3). The question is whether Rolshouse has acted or failed to act in Kentucky in a manner that involved "minimum contacts" with Kentucky "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Ford v. RDI/Caesars Riverboat Casino, LLC*, 503 F. Supp. 2d 839, 843 (W.D. Ky. 2007)(quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). The Sixth Circuit and Kentucky courts follow a familiar three-part test for determining whether a non-resident defendant has sufficient "minimum contacts":

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)(footnote omitted); *see Cummings v. Pitman*, 239 S.W.3d 77, 85 (Ky. 2007)(applying the same three-pronged test).

### 1.

The first prong of the test ensures that a defendant will not be haled into a jurisdiction as a result of "random," "fortuitous," or "attenuated" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The Kentucky Supreme Court has remarked that the "two cornerstones of this analysis are foreseeability and voluntariness." *Cummings*, 239 S.W.3d at 86 (citing *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994)). Indeed, quoting *Burger King*, the Kentucky Supreme Court observed:

9

> [w]here the defendant deliberately has engaged in significant activities
> with a State, **or has created continuing obligations between himself and
> residents of the forum,** he manifestly has availed himself of the privilege
> of conducting business there, and because his activities are shielded by the
> benefits and protections of the laws it is presumptively not unreasonable
> to require him to submit to the burdens of litigation in the forum as well.

*Id.* (Emphasis in original)(quoting *Burger King*, 471 U.S. at 476)).  In *Burger King*, the Supreme

Court explained that while "an individual's contract with an out-of state party *alone* can[not]

automatically establish sufficient minimum contact in the other party's home forum," *id.* at 478,

"prior negotiations and contemplated future consequences, along with the terms of the contract

and the parties' actual course of dealing . . . must be evaluated in determining whether the

defendant purposefully established minimum contacts with the forum." *Id.* at 479.

Thus in analyzing the extent to which the agreement between Rolshouse and Wadlington

can support jurisdiction, the Court must focus in large part on the "prior negotiations" and

"contemplated future consequences," the "terms of the contract"and the "actual course of

dealing" with respect to the alleged legal representation.  *See id.*  The parties' written

submissions do not reveal a lengthy relationship between Rolshouse and the Torain estate.

Rolshouse did not visit Kentucky or prepare or file documents there.  So far as the Court can tell,

he did not direct any communication, via phone, fax, or otherwise to Kentucky.  He does not

maintain a law office in Kentucky, he is not licensed to practice law there, and does not solicit

business in Kentucky.  He did not receive payment from the Kentucky estate.  Without more,

these facts suggest that there are insufficient contacts to support personal jurisdiction.[3]

---

[3]Courts in other jurisdictions have also had occasion to decided under what circumstances personal jurisdiction is proper over a nonresident attorney in a legal malpractice case. Though the inquiry is necessarily fact-intensive, the Court's review of a collection of cases reveal that courts frequently consider factors including the duration of the professional relationship, whether the attorney had ever traveled to or advertised in the forum state, whether the attorney had voluntarily entered into an agreement to supply services, the residency of the plaintiff-

On the other hand, this Court has concluded that Rolshouse, through his conduct, undertook representation of a Kentucky estate in a potential claim with several connections to Kentucky which "contemplated future consequences" there.  Rolshouse proposed and Wadlington, acting on behalf of the Kentucky estate, agreed to a contingency fee arrangement which would ultimately have been paid from an estate created in a Kentucky court pursuant to Kentucky law.  The forms Wadlingotn returned to Rolshouse indicated that Torain died in Kentucky and was treated by Kentucky physicians.  In any event, investigation of the Kentucky estate's claim would have involved contact with Kentucky because it arose from a death that occurred in Kentucky,  allegedly as a result of negligence by a Kentucky physician.  Regardless of whether Rolshouse's representation would have eventually involved filing a lawsuit, the parties' agreement clearly envisioned an investigation that would have inevitably involved contact with parties located in Kentucky.

Although the Kentucky long-arm statute provides jurisdiction over an individual "causing tortious injury by an act or omission in this Commonwealth" Ky. Rev. Stat. Ann. § 454.210(2)(a)(3), Kentucky courts have not delineated under what circumstances the mere failure to act, in the absence of other contact with the forum, could support jurisdiction.[4]  The

---

client, and where the underlying cause of action arose.  *See* 23 A.L.R. 4th *In Personam Jurisdiction, Under Long-Arm Statute, Over Nonresident Attorney in Legal Malpractice Action* (1983 & Supp.).

[4]In *Allen v. James*, 381 F. Supp. 2d 495 (E.D. Va. 2005), the Eastern District of Virginia considered a case bearing several similarities to the facts before this Court.  In that case, a Virginia resident hired a South Carolina attorney to represent her in connection with an automobile accident which occurred in Virginia.  *Id.* at 496-97.  The Virginia resident sued the South Carolina attorney for legal malpractice when the attorney failed to file a lawsuit on the client's behalf within the applicable statute of limitations.  *Id.* The attorney, who was not an active member of the Virginia and did not solicit clients there, did make phone calls and engage in other communications with Virginia residents and entities in connection with the claim.  *Id.* at 497-98.  In holding that the attorney was subject to personal jurisdiction in Virginia, the court distinguished the case from those in which other courts had found that "providing out-of-state representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state *in which a client resides*" by noting that in addition to the plaintiff residing in Virginia, the attorney contracted to provide legal representation in connection with a car accident that took place in Virginia.  *Id.*

11

facts before the Court present an especially close case because although Rolshouse agreed to provide legal representation in connection with a death that occurred here, it does not appear that he made any contact with a Kentucky resident in so doing.  The very essence of Wadlington and Day's claim is that in taking no action on the case, including apparently any investigation, prior to the expiration of the statute of limitation, Rolshouse failed in the continuing obligation he undertook to legally represent the interests of a Kentucky estate for the potential of monetary gain from a Kentucky estate.  The Court cannot, at this time, measure the extent of activity and contact with Kentucky which would have resulted from the non-negligent representation of the underlying claim.  It would seem a strange result for Rolshouse to shield himself from personal jurisdiction in Kentucky by pointing to the very inaction that allegedly forms the basis for the legal malpractice claim.

It is true that aside from the disputed agreement to represent a Kentucky estate, Rolshouse's contacts with Kentucky are virtually non-existent. The Court agrees that a single contract with a Kentucky resident, under most circumstances, is insufficient to automatically support personal jurisdiction.  *See Nat'l Grange Mut. Ins. Co. v. White*, 83 S.W.3d 530, 535 (Ky. 2002); *Burger King*, 471 U.S. at 478.   Similarly, the fact that the real party in interest to the Kentucky estate's claim is a Kentucky resident is not, without more, sufficient to support jurisdiction.  However, forming an attorney-client relationship to investigate a medical malpractice claim for a death that occurred in Kentucky "contemplates future consequences" and "continuing obligations" with Kentucky residents which would have inevitably involved significant contact with the forum such that his connection to Kentucky cannot be viewed as

12

"random," "fortuitous," or "attenuated." *Burger King,* 471 U.S. at 480.  In sum, Rolshouse's

representation of  the Torain estate's claim in connection with a death that occurred in Kentucky

foreseeably involved contact with Kentucky.  His alleged failure to act in connection with the

Kentucky claim caused foreeable injury to Kentucky residents, such that it is presumptively

reasonable for Rolshouse to "be called to account there for such injuries."[5]

2.

The second prong of the minimum contacts test requires the Court to decide whether the

cause of action arises from the defendant's activities in the state.  *See Cummings*, 239 S.W.3d at

88.  "Only when the operative facts of the controversy are not related to the defendant's contact

with the state can it be said that the cause of action does not arise from that contact." *Id.* (quoting

*S. Mach. Co.*, 401 F2d. at 384).

Through his conduct, Rolshouse undertook legal representation that involved, at

minimum, investigation of a death that occurred in Kentucky.  *See Lovell*, 941 S.W.2d at 468.  It

is difficult to conceive how legal representation of an estate for medical malpractice alleged to

have occurred in Kentucky could proceed at all, if not through significant contact with Kentucky.

Investigating the viability of such a claim anticipates, at the very least, gathering facts and

information from Kentucky parties, and may also involve researching and ultimately practicing

Kentucky law.  These acts would have involved Kentucky, and the failure to do them are

---

[5]The continuing obligation resulting from the attorney-client relationship, and the contemplated future consequences of such an agreement distinguish our case from those cited by Rolshouse where Kentucky courts have considered the effects of a single tortious act. *See, e.g. Powers v. Park*, 192 S.W.3d 439 (Ky. Ct. App. 2006); *Pierce v. Serafin*, 787 S.W.2d 705 (Ky. Ct. App. 1990).  For these reasons, the Court concludes that Wadlington and Day have stated a prima facie case that Rolshouse purposefully availed himself of the privilege of acting within Kentucky or causing consequence in this state.

therefore omissions which occurred in Kentucky.  Rolshouse characterizes the omission as the
"failure to timely advise" of the statute of limitations, a communication that would have
presumably occurred between residents of Minnesota and Indiana.  However, Wadlington and
Day's complaint plainly alleges that Rolshouse was negligent in "undertaking the legal
representation of the Estate of Lavonda Torain."[6]  Focusing on where the administratrix
happened to reside overlooks the larger fiduciary obligation that Rolshouse undertook, which
was to represent a Kentucky estate regarding negligence which allegedly occurred in Kentucky.
Thus, the Court concludes that the consequences and indeed the omissions in the legal
representation can be fairly said to have occurred in Kentucky.

3.

The final prong considers whether the acts by the defendant or the consequences caused
have a substantial enough connection to make the exercise of jurisdiction over the defendant
reasonable.  Here, the Court considers "the burden on the defendant, the interest of the forum
State, the plaintiff's interest in obtaining relief, . . . [the] 'interest in obtaining the most efficient
resolution of controversies; and the shared interest of the several states in furthering fundamental
substantive social policies." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292
(1980).

"The fiduciary duties and ethical responsibilities associated with [roles as an attorney
and trustee] far exceed . . .mere contractual relationship[s]." 239 S.W.3d at 89 (citing *McGee v.
Int'l Life Ins. Co.*, 355 U.S. 220 (1957)(involving an insurance contract). Although it is true that
"the mere fact that the beneficiary resides in a forum state is not of itself sufficient to justify

---

[6]This distinction further separates our facts from those Kentucky cases, including *Pierce*, 787 S.W.2d 705,
and *Powers*, 192 S.W.3d 439 where the Court was focused on tortious activity occurring outside Kentucky.

14

long-arm jurisdiction." *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 254 (1958), the fiduciary duties and ethical responsibility of an attorney exist even at the beginning of the relationship.

It may well be less convenient for Rolshouse to defend a legal malpractice claim in Kentucky. However, the Commonwealth has a significant interest in providing a forum for its citizens and in ensuring that attorneys who undertake to represent its citizens within the state do so in a professional and non-negligent manner. Moreover, proof of the alleged legal malpractice claim, which Kentucky courts have described as a "suit within a suit," will require Wadlington and Day to show that they "would have fared better in the underlying claim; that is, but for the attorney's negligence, the plaintiff would have been more likely successful." *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). Because the underlying claim involved allegations of medical malpractice in Kentucky, much of that proof will derive from Kentucky. The Court therefore concludes that the assertion of personal jurisdiction would comport with "fair play and substantial justice."

To be sure, the unusual facts of this case present difficult and close questions. However, upon review of the pleadings and affidavits in the light most favorable to Wadlington and Day, the Court finds that they have made a *prima facie* showing of a substantial enough connection to Kentucky for jurisdiction over Rolshouse to be reasonable. As discussed above, the Court's finding, at this early stage of the litigation, of personal jurisdiction over Rolshouse rests on its tentative conclusions about the nature of the attorney-client relationship and the location and nature of the underlying medical malpractice claim. These tentative conclusions are based on the parties' written submissions and the limited factual record before the Court. The Court therefore concludes that Rolshouse's allegations make a prima facie case for personal

15

jurisdiction. The Court holds out the options of finally resolving the jurisdictional dispute after pretrial discovery or even at trial. Rolshouse has certainly not waived its personal jurisdiction defense at this point of the litigation as "a threshold determination that personal jurisdiction exists 'does not relieve [the plaintiff] . . . at trial of the case-in-chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence." *Serras*, 875 F.2d at 1214 (internal citation omitted).

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Rolshouse's motion to dismiss is DENIED at this time.

cc:     Counsel of Record